## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REBECCA THOMASSON and ANDREW THOMASSON, | § § § | |
| Plaintiffs, | § § | |
| *vs.* | § § | Civil Action No. 5:24-cv-00944 |
| SEAN SULLIVAN HOMES LLC; LOGAN SEAN SULLIVAN; and DOES 1-25, | § § § | |
| Defendants. | § § § | |

## COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, TEXAS TELEPHONE SOLICITATION ACT, TEXAS TELEMARKETING DISCLOSURE AND PRIVACY ACT, AND DEMAND FOR JURY TRIAL

Plaintiffs, Rebecca Thomasson and Andrew Thomasson, by way of their Complaint against Defendants, Sean Sullivan Homes LLC ("Sullivan LLC"), Sean Sullivan, and DOES 1-25 (collectively, "Defendants"), state:

### I.    NATURE OF THE ACTION

1. Plaintiffs bring this complaint against Defendants whose policy and practice of placing telephone calls to, and leaving prerecorded voice messages for, Texas residents in violation of federal and state laws including, but not necessarily limited to, the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.* and Texas Business & Commerce Code §§ 305.053 and 302.101.

2. The Defendants' violative policies include, *inter alia*, operating as an unregistered entity and placing repeated unwanted calls, leaving prerecorded voice messages, and transmitting text messages to recipients who, like the Plaintiffs, registered their telephone numbers on the National and Texas "Do Not Call" registries to inform

solicitors their telephone calls, messages, and texts are unwelcome.

3.      Defendants overwhelmed the Plaintiffs with prerecorded voice messages and calls that violate the Federal Trade Commission's "Do Not Call" Rule, TCPA, and Texas Business & Commerce Code.

### A. The TCPA.

4.      In 1991, Congress enacted the TCPA to regulate explosive growth in the telemarketing industry because Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and determined federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

5.      The TCPA required the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at § 227(c)(1)(A), (E). The FCC established company-specific "do not call" rules under this statutory mandate. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

6.      The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid

unwanted telephone solicitations." *Id*. at 8765, ¶ 23. However, recognizing an honor system would probably be insufficient, the FCC found it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id*. at ¶ 24.

7.      These regulations, codified at 47 CFR 64.1200(d)(1)-(7), require companies to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1) - (3), (6). These policies and procedures prohibit companies from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

8.      "Text messages are 'calls' subject to the TCPA, as previously determined by the Commission." *In re Rules and Reguls. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7965, 2015 WL 4387780 (FCC July 10, 2015). And a private right of action exists to enforce the TCPA under 47 C.F.R. § 64.1200(d). 47 U.S.C. § 227(c)(5).

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

9.      These requirements are separate but cumulative, which means companies must comply with both procedures—namely, the company-specific do not call list *and*

the national "do not call" database regulations (discussed below in section IB). Failure to comply with either is a distinct violation of 47 U.S.C. § 227(c). Although some of these requirements mention "residential" telephones, cellular telephones can in certain circumstances be a "residential" telephone. 47 CFR § 64.1200(e).

10.     Further, a person or entity is liable under the TCPA for violative calls made on its behalf even if that person or entity did not directly dial such calls. *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the Telephone Consumer Protection Act Rules*, 28 FCC Rcd. at 6574 ¶28.

11.     Accordingly, an entity is liable under the TCPA for prohibited calls made on its behalf under several theories including vicarious liability. Under those circumstances, including as described herein, sellers are properly deemed to have initiated calls through the person or entity who actually placed the calls. *Johnson v. Palmer Admin. Servs.*, No. 6:22-cv-00121, 2022 U.S. Dist. LEXIS 206601 (E.D. Tex. Nov. 14, 2022).

**B. *National Do Not Call Registry.***

12.     The National Do Not Call Registry ("Registry") allows consumers to register their telephone numbers, indicating their desire not to receive telephone

solicitations at those numbers; the registration "must be honored indefinitely, or until it is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2).

13.    The TCPA and implementing regulations forbid initiating telephone solicitations[1] to residential telephone subscribers whose numbers are on the Registry; it provides a private right of action against any entity initiating such calls, or any entity "on whose behalf" such calls are initiated. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### C. Texas Business and Commerce Code.

14.    Communications that violate the TCPA or any of its regulations also violate Texas Business & Commerce Code § 305.053(a). A successful plaintiff may recover injunctive relief, actual damages or $500 for each violation, and treble damages or $1,500 for knowing or intentional violations. *Id*.

15.    Additionally, it is a violation under Texas Business & Commerce Code § 302.101 for "a seller" to "make a telephone solicitation . . . to a purchaser located in this state unless the seller holds a registration certificate for the business location from which

---

[1] There is a significant distinction between "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list. "Telephone solicitation" are calls or messages initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" but excludes persons with whom the sender has an "established business relationship." 47 CFR § 64.1200(f)(15). This business relationship can be established by a "voluntary two-way communication," 47 CFR § 64.1200(f)(5), but can be terminated by a "do not call" request, 47 CFR § 64.1200(f)(5)(i). By contrast, "Telemarketing" includes calls made for purposes of encouraging purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR § 64.1200(f)(13). In other words, prior to making telemarketing calls, regardless of relationship, a company must implement the company-specific do-not-call regulations but need only comply with national do-not-call registry provisions regarding persons lacking an established business relationship.

the telephone solicitation is made." A person who violates § 302.101 is subject to a civil penalty of no more than $5,000 for each violation and is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees. Tex. Bus. & Com. Code § 302.302(a), (d).

16.    The Defendants' violations of Chapter 302 of the Texas Business & Commerce Code also constitute *per se* false, misleading, and deceptive acts or practices under the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46. *See,* Tex. Bus. & Com. Code § 302.303.

17.    The Texas legislature codified its express requirement that Chapter 302 of the Texas Business & Commerce Code "shall be liberally construed and applied to promote its underlying purpose to protect persons against false, misleading, or deceptive practices in the telephone solicitation business." Tex. Bus. & Com. Code § 302.003.

## II.    PARTIES

18.    Rebecca Thomasson is a natural person.

19.    At all times relevant to this Complaint, Rebecca Thomasson was a citizen of, and resided in, the City of San Antonio, Bexar County, Texas.

20.    Andrew Thomasson is a natural person.

21.    At all times relevant to this Complaint, Mr. Thomasson was a citizen of, and resided in, the City of San Antonio, Bexar County, Texas.

22.    Andrew Thomasson ("Mr. Thomasson") and Rebecca Thomasson ("Mrs. Thomasson") are married and live together as husband and wife.

23.    Sullivan LLC is a for-profit limited liability company organized under Texas law.

24.     Sullivan LLC maintains its principal place of business at 8309 Thornhill Drive, North Hills, Texas 82801.

25.     Sullivan LLC may be served with process through its Registered Agent, Sean Sullivan, at 8309 Thornhill Drive, North Hills, Texas 82801, or wherever it may be found.

26.     Sean Sullivan is a natural person.

27.     At all times relevant to this Complaint, Sean Sullivan was a citizen of, and resided in, the City of Plano, Collin County, Texas.

28.     Sean Sullivan may be served with process at 2513 Northcrest Drive, Plano, Texas 75075-8101, or wherever he may be found.

29.     Sean Sullivan is the sole member, owner, officer, and/or managing agent of Sullivan LLC.

30.     Sean Sullivan personally created, instituted and, with knowledge such practices are contrary to law, acted consistent with, conspired with, engaged in, and oversaw Sullivan LLC's violative policies and procedures at issue in this Complaint.

31.     Whenever Sullivan LLC allegedly performed any act or engaged in conduct, it means Sullivan LLC through Sean Sullivan and DOES 1-25—individually or acting in concert with one another—or its members, officers, agents, and/or employees performed or conducted the action(s) on its behalf and under its authority.

32.     DOES 1-25 are sued under fictitious names as their true names and capacities are yet unknown. Plaintiffs will amend this complaint by inserting the true names and capacities of DOES 1-25 once they are ascertained.

33.     DOES 1-25 are natural persons and/or business entities who personally created, instituted and, with knowledge such practices were contrary to law, acted

consistent with, conspired with, engaged in, and oversaw Sullivan LLC's violative

policies and procedures that are the subject of this Complaint. DOES 1-50 personally

control Sullivan LLC and engaged in the illegal acts, policies, and practices Defendants

used and, thus, are personally liable for all wrongdoing alleged in this Complaint.

### III.    JURISDICTION AND VENUE

34.    This Court's jurisdiction arises under 47 U.S.C. § 227(g)(2), and 28 U.S.C.

§§ 1331 and 1337.

35.    Supplemental jurisdiction for Plaintiffs' state law claims arises under 28

U.S.C. § 1367.

36.    Venue is appropriate in this federal district under 47 U.S.C. § 227(g)(4)

and 28 U.S.C. § 1391 because each Defendant regularly transacts business within this

federal judicial district where the violations complained of occurred and, therefore,

reside in this district within the meaning of 28 U.S.C. §§ 1391(b) and (c).

### IV.    FACTUAL ALLEGATIONS

37.    Mr. Thomasson's telephone number, XXX-XXX-5180, is registered to a

cellular telephone service; he has retained the cell phone number for over two decades.

38.    Mr. Thomasson does not have a residential telephone number other than

his cell phone number.

39.    Mr. Thomasson uses his cellular telephone number for residential

purposes—*i.e.*, for his own personal, family, and household use.

40.    Mr. Thomasson is the only user of his cellular phone number.

41.    Mr. Thomasson uses his cellular telephone number for personal use; it is a

family plan registered in his personal name, paid from his personal bank account, and it is the primary way he communicates with his friends and family.

42.    Mr. Thomasson's cellular telephone number is unassociated with a business.

43.    On February 21, 2019, Mr. Thomasson registered his cellular telephone number ending in 5180 on the National Do Not Call Registry.

44.    Mr. Thomasson registered his cellular telephone number ending in 5180 on the National Do Not Call Registry to obtain solitude from unwanted telemarketing calls.

45.    Since 2019, Mr. Thomasson's cellular telephone number ending in 5180 has been registered on the Texas Public Utility Commission-sponsored "No Call Lists."

46.    Mr. Thomasson registered his cellular telephone number ending in 5180 on the Texas Public Utility Commission-sponsored "No Call Lists" to obtain additional solitude from unwanted telemarketing calls.

47.    Mrs. Thomasson's telephone number, XXX-XXX-9424, is registered to a cellular telephone service; she has retained her cell phone number for nearly two decades.

48.    Mrs. Thomasson does not have a residential telephone number other than her cell phone number.

49.    Mrs. Thomasson uses her cellular telephone number for residential purposes.

50.    Mrs. Thomasson is the primary user of her cellular phone number.

51.    Mrs. Thomasson uses her cellular telephone number for personal use.

52.    Mrs. Thomasson's cellular telephone number is not associated with a business.

53.     On February 21, 2019, Mrs. Thomasson registered her cellular telephone number ending in 9424 on the National Do Not Call Registry.

54.     Mrs. Thomasson registered her cellular telephone number ending in 9424 on the National Do Not Call Registry to obtain solitude from unwanted telemarketing calls.

55.     Since 2019, Mrs. Thomasson's cellular telephone number ending in 9424 has been registered on the Texas Public Utility Commission-sponsored "No Call Lists."

56.     Mrs. Thomasson registered her cellular telephone number ending in 9424 on the Texas Public Utility Commission-sponsored "No Call Lists" to obtain additional solitude from unwanted telemarketing and solicitation calls.

57.     Sullivan LLC and Sean Sullivan market themselves to distressed homeowners whose homes are listed for imminent foreclosure auction by claiming they "specialize in stopping foreclosures".

58.     The Defendants assertion that they "specialize in stopping foreclosures" is untrue.

59.     The Defendants make and use prerecorded telemarketing calls that violate the TCPA.

60.     The Defendants also make and use solicitation calls to individuals on the national Do Not Call Registry, which likewise violate the TCPA.

61.     Between July 19, 2024, and August 1, 2024, Plaintiffs received the following prerecorded telephone calls on their respective cellular residential telephones ending in 5180 and 9424:

| DATE | TIME | PERSON CONTACTED | CALL | TEXT | MESSAGE |
|---|---|---|---|---|---|
| | | | | | |
| 7/19/24 | 2:53 PM | Andrew | X | | X |
| | | Rebecca | X | | X |
| | | | | | |
| 7/20/24 | 1:07 PM | Andrew | X | | X |
| | | | | | |
| 7/22/24 | 7:34 PM | Andrew | X | | X |
| | | | | | |
| 7/25/24 | 1:43 PM | Andrew | X | | X |
| | | | | | |
| 7/31/24 | 10:15 AM | Andrew | X | | X |
| | | | | | |
| 8/1/24 | 2:51 PM | Andrew | X | | X |
| | 2:52 PM | Rebecca | X | | X |
| | | | | | |

62.     During each of the above-listed calls, Defendants left a prerecorded voicemail message in Mr. and Mrs. Thomasson's respective cellular mailbox.

63.     Mr. and Mrs. Thomasson each listened to Defendants' voicemail messages.

64.     Defendants' voicemails were prerecorded voice messages soliciting Mr. and Mrs. Thomasson to return the calls and learn about Defendants' "specialized" services offerings.

65.     Each of Defendants' prerecorded voice messages stated the following:

> Hi, my name is Sean, and I specialize in stopping foreclosures and I can go over all of your options at no cost to you. Please give me a call back at 817-773-3894 and I'll be happy to help.

The recordings for each of Defendants' referenced voicemail messages may be heard by clicking on the ▶ found in the above list.

-11-

66.     Attached as *Exhibit A* is a true copy of the screenshots from Mr. and Mrs. Thomasson which reflect the date and time Defendants called, the number used to place the calls, and the voicemail messages they left Mr. and Mrs. Thomasson.

67.     Because Defendants' calls constitute telemarketing, they were required to obtain Mr. and Mrs. Thomasson's prior express written consent prior to calling.

68.     "Prior express written consent" is specifically defined by statute as:

> [A]n agreement, in writing, bearing the signature of the person called **that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or <u>prerecorded voice</u>**, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. §64.1200(f)(8) (Emphasis added).

69.     None of the Defendants are licensed to practice law or have any other type of "specialized" training "to stop foreclosures."

70.     The Defendants see foreclosures as an opportunity to gouge *substantial* profits from the misfortunes of the person whose home is being foreclosed upon, but only, of course, if that person agrees to use *their* "services" instead of someone else's; thus, Defendants are racing their competitors.

71.     To win the race with their competitors, Defendants engage in mass transmission of unsolicited, automated telemarketing calls and prerecorded voice solicitation messages to increase their customer base and profits.

72.     Neither Mr. Thomasson nor Mrs. Thomasson publish or disclose their cellular telephone numbers.

73.    Once Defendants decided to target the Plaintiffs, they ran a skip trace and obtained Mr. and Mrs. Thomasson's private cellular telephone numbers and placed that information into Sullivan LLC's computer and ATDS to place telephone calls and deliver prerecorded voice messages.

74.    Defendants never had an "established business relationship" with Mr. Thomasson within the meaning of 47 C.F.R. § 64.1200(f)(5).

75.    Defendants never had an "established business relationship" with Mrs. Thomasson within the meaning of 47 C.F.R. § 64.1200(f)(5).

76.    Nonetheless, the Defendants blitzed Mr. and Mrs. Thomasson with automated telemarketing calls that delivered prerecorded voice messages.

77.    Defendants used spoofed telephone numbers to call Plaintiffs' respective cell phones which are untraceable through traditional methods; thus, the full extent of Defendants' telephone calls and prerecorded voice messages cannot be determined until discovery commences.

78.    Defendants' unsolicited mass delivery of prerecorded voice messages to Plaintiffs' cellular telephones violates the TCPA and Texas Business & Commerce Code.

79.    Defendants' unsolicited telephone calls and prerecorded voice messages, like the ones at issue in this lawsuit, are considered actionable calls and "telephone solicitations" under the TCPA and Texas Business & Commerce Code.

80.    The Defendants ultimately charge, and are paid, fees for the services they solicited to Mr. and Mrs. Thomasson.

81.    The TCPA and Texas Business & Commerce Code require prior express written consent for all telemarketing calls to wireless numbers.

82.     Defendants failed to obtain Mr. Thomasson's express written consent to place marketing telephone calls and deliver prerecorded voice messages to his cellular telephone number.

83.     Defendants failed to obtain Mrs. Thomasson's express written consent to place marketing telephone calls and deliver prerecorded voice messages to her cellular telephone number.

84.     The Defendants knowingly called Plaintiffs without their prior express written consent and, in doing so, not only invaded Plaintiffs' personal privacy, but also repeatedly violated the TCPA and Texas Business & Commerce Code.

85.     None of Defendants' telephone calls or prerecorded voice messages to Mr. and Mrs. Thomasson were made for emergency purposes.

86.     In violation of The Truth in Caller ID Act, the Defendants' text messages and telephone calls were spoofed to reflect the text/call/messages as being from a different number to mislead the Plaintiffs into answering the calls.

87.     The Defendants use an ATDS to place the telephone calls at issue. Specifically, the hardware and software Defendants (and their agents) use has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. The Defendants' ATDS includes features substantially like a predictive dialer because it can simultaneously place calls and send numerous text messages to different recipients without human intervention.

88.     Defendants caused Plaintiffs actual harm and cognizable legal injury including, *inter alia*, aggravation, nuisance, and invasions of privacy resulting from

receiving Defendants' calls, loss of value realized for monies paid to their carrier for receiving Defendants' communications, and loss of use and enjoyment of their phones including wear and tear to related data, memory, software, hardware, and battery components.

89.    Andrew Thomasson is a "person" as defined by 47 U.S.C. § 153(39).

90.    Andrew Thomasson is a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

91.    Rebecca Thomasson is a "person" as defined by 47 U.S.C. § 153(39).

92.    Rebecca Thomasson is a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

93.    Sullivan LLC is a "person" within the meaning of 47 U.S.C. § 153(39).

94.    Sullivan LLC is a "telemarketer" within the meaning of 47 C.F.R. § 64.1200(f)(12).

95.    Sean Sullivan is a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

96.    Sean Sullivan is a "telemarketer" as defined by 47 C.F.R. § 64.1200(f)(12).

97.    At all relevant times, the Defendants individually and collectively acted as each other's marketing agent with Sullivan LLC and DOES 1-25 supplying, supporting, and paying for the telephony equipment, software, and services that Defendants used to commit the violations alleged in this complaint.

98.    Defendants' unsolicited calls and prerecorded voice messages to Plaintiffs' cellular telephones, as reflected above and on *Exhibit A*, constitute "telemarketing" within the meaning of 47 C.F.R. § 64.1200(f)(13).

99.    Defendants' unsolicited calls and prerecorded voice messages to Plaintiffs' cellular telephones, as reflected above and on *Exhibit A*, constitute "telephone solicitation" within the meaning of 47 U.S.C. § 227(a)(4) because the calls and messages were initiated and transmitted to Mr. and Mrs. Thomasson for the purpose of encouraging them to purchase Defendants' property, goods, and services.

100.    The Defendants neither maintained nor enforced a meaningful internal do-not-call policy; alternatively, if a policy existed, they failed to comply with the minimum requirements of 47 C.F.R. § 64.1200(d) and/or were never properly implemented.

101.    Defendants' violations were knowing and willful and, therefore, Mr. and Mrs. Thomasson are each entitled to recover actual and treble damages, a permanent injunction enjoining the Defendants from committing future telemarketing violations, and recovery of their reasonable attorney fees and costs.

102.    Under Tex. Bus. & Com. Code § 302.101, sellers are prohibited from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Texas Secretary of State for the business location from which the solicitation is made.

103.    None of the Defendants hold a registration certificate for the business location from which they made telephone solicitations to Plaintiffs as required by Tex. Bus. & Com. Code § 302.101.

## V.    COUNT ONE: VIOLATIONS OF THE TCPA, U.S.C. § 227(b)

### (Against All Defendants)

104.    The preceding Factual Allegations are incorporated by reference.

105.    Defendants individually and collectively violated 47 U.S.C. § 227(b) by placing prerecorded telemarketing solicitation calls to Plaintiffs' cellular telephone numbers without having prior express written consent.

106.    The Defendants' TCPA violations were negligent and/or willful.

107.    Plaintiffs are each entitled to an award of $500 in statutory damages under 47 U.S.C. § 227(b)(3)(B) because of Defendants' unlawful conduct.

108.    Plaintiffs are entitled to an award of treble damages up to $1,500 under 47 U.S.C. § 227(b)(3)(C) for each call Defendants knowingly or willfully made.

## VI.    COUNT TWO: VIOLATIONS OF THE TCPA'S NATIONAL DO-NOT-CALL REGISTRY PROVISIONS, U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c)(2)

### (Against All Defendants)

109.    The preceding Factual Allegations are incorporated by reference.

110.    Defendants individually and collectively violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by placing two or more prerecorded telemarketing solicitation calls within a 12-month period to Plaintiffs' cellular telephone numbers despite their uninterrupted existence on the National Do Not Call Registry.

111.    Defendants individually and collectively transmitted their unsolicited advertisements and placed calls to Plaintiffs' cellular telephones without complying with the identification and disclosure requirements under 47 C.F.R. § 64.1200(d)(4).

112.    Defendants' TCPA violations were negligent and/or willful.

113.    Plaintiffs are each entitled to an award of $500 in statutory damages under

47 U.S.C. § 227(c)(5)(B) because of Defendants' unlawful conduct.

Plaintiffs are entitled to an award of treble damages up to $1,500 under 47 U.S.C. § § 227(c)(5)(B) for each call Defendants knowingly or willfully made.

## VII.    <u>COUNT THREE:</u>  VIOLATIONS OF TEX. BUS. & COM. CODE § 305.053
### (Against All Defendants)

114.    The preceding Factual Allegations are incorporated by reference.

115.    Defendants individually and collectively placed at least one prerecorded telemarketing telephone call to Plaintiffs' cellular telephone numbers which violated 47 U.S.C. § 227(b); thus, Plaintiffs are each entitled to:

115.1.   a permanent injunction enjoining Defendants' further violations of Tex. Bus. & Com. Code § 305.053(a)(1);

115.2.   the greater of $500 for each violation or Plaintiffs' actual damages (*see* Tex. Bus. & Com. Code § 305.053(b)(1)); and

115.3.   the greater of $1,500 for each violation or Plaintiffs' actual damages call Defendants knowingly or intentionally made to Plaintiffs' cellular telephones (Tex. Bus. & Com. Code §305.053(c)(1)).

## VIII.   <u>COUNT FOUR:</u>  VIOLATIONS OF TEX. BUS. & COM. CODE § 302.302
### (Against All Defendants)

116.    The preceding Factual Allegations are incorporated by reference.

117.    Andrew Thomasson is a "consumer" as defined by Tex. Bus. & Com. Code § 301.001(2).

118.    Andrew Thomasson is a "purchaser" as defined by Tex. Bus. & Com. Code § 302.001(3).

119.    Rebecca Thomasson is a "consumer" as defined by Tex. Bus. & Com. Code § 301.001(2).

120.    Rebecca Thomasson is a "purchaser" as defined by Tex. Bus. & Com. Code § 302.001(3).

121.    Sullivan LLC is a "telephone solicitor" as defined by Tex. Bus. & Com. Code § 301.001(5).

122.    Sullivan LLC is a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

123.    Sean Sullivan is a "telephone solicitor" as defined by Tex. Bus. & Com. Code § 301.001(5).

124.    Sean Sullivan is a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

125.    The Defendants' telephone calls and Plaintiffs constitute "telephone solicitation" as defined by Tex. Bus. & Com. Code § 302.001(7).

126.    Under Tex. Bus. & Com. Code § 302.101, sellers are prohibited from engaging in telephone solicitation from a location in the State of Texas or to a purchaser located in Texas unless the seller obtains a registration certificate from the Texas Office of the Secretary of State for the business location from which the solicitation is made.

127.    Defendants each violated Tex. Bus. & Com. Code § 302.101 by targeting Mr. and Mrs. Thomasson with continuous, and abusive, telephone solicitation without having a registration certificate from the Texas Office of the Secretary of State.

128.    Defendants each violated Tex. Bus. & Com. Code § 302.202 by failing to make required disclosures when their telephone solicitations were made to Plaintiffs.

129.    Defendants' violations of Tex. Bus. & Com. Code § 302.101, *et seq.* as alleged in this Complaint also constitute a false, misleading, and deceptive act or practice under Tex. Bus. & Com. Code § 17.46.

130.    Under Tex. Bus. & Com. Code § 302.302(a), a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

131.    Under Tex. Bus. & Com. Code § 302.302(d) Plaintiffs are each entitled to recover their reasonable costs incurred with prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

## IX.    PRAYER FOR RELIEF.

132.    WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and against Defendants, jointly and severally, as follows:

132.1.    Finding Defendants' conduct and actions, as complained of in this lawsuit, violated 47 U.S.C. § 227(b) and (c);

132.2.    Finding Defendants' conduct and actions, as complained of in this lawsuit, violated Tex. Bus. & Com. Code § 302.101;

132.3.    Finding Defendants' conduct and actions, as complained of in this lawsuit, violated Tex. Bus. & Com. Code § 305.053;

132.4.    Awarding injunctive and other equitable relief as necessary to protect Mr. and Mrs. Thomasson, their family, and the general public from Defendants engaging in future abuse and unlawful conduct as complained of in this lawsuit;

132.5.    Awarding statutory damages on each cause of action;

132.6.    Awarding treble damages;

132.7.    Awarding Pre- and Post-Judgment interest;

132.8.    Awarding Plaintiffs' reasonable attorney's fees and cost incurred in bringing this action; and

132.9.    Such other and further relief the Court deems just and proper.

## X.    JURY DEMAND.

133.    Demand is hereby made for trial by jury.


Dated: August 23, 2024                    Respectfully submitted,

                                          *s/ Andrew T. Thomasson*
                                          Amy L.B. Ginsberg (Tex. Bar. No. 24107506)
                                          Andrew T. Thomasson (NJ Bar No. 04836201)
                                               THOMASSON PLLC
                                          16414 San Pedro Avenue, Suite 700
                                          San Antonio, TX 78232-2272
                                          Telephone: (877) 857-5733
                                          Facsimile:  (973) 559-5779
                                          Email: Amy@Thomassonpllc.com
                                          Email: Andrew@Thomassonpllc.com

                                          *Attorneys for Plaintiffs, Rebecca Thomasson and Andrew Thomasson*